Filed 12/11/20: Opinion on transfer from Supreme Court

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re<br><br><br><br>KAHEAL JEVON PARRISH<br><br><br><br>On Habeas Corpus. | B292582<br><br>(Los Angeles County<br>Super. Ct. No. BA260528) |

ORIGINAL PROCEEDING.  Petition for writ of habeas corpus.  Kathleen Kennedy, Judge.  Petition denied.

James M. Crawford, under appointment by the Court of Appeal, for Petitioner.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Zee Rodriguez, Supervising Deputy Attorney General, and Michael C. Keller, Deputy Attorney General, for Respondent.

————————————

For the crime of murder, a court sentenced Kaheal Jevon Parrish to life in prison without parole. Parrish was not the shooter. A statute nonetheless authorized his sentence, because Parrish was a major participant who acted with reckless indifference to human life. (Pen. Code, § 190.2, subd. (d).)

                                    I

We view the facts favorably to the prosecution. (*People v. Clark* (2016) 63 Cal.4th 522, 610 (*Clark*).) Parrish, Earl Childs, and Zack Gaines planned to rob a market. Parrish and Gaines scouted it beforehand. Then Parrish drove Childs and Gaines to the market in his car. Parrish gave Gaines a gun to use. Parrish knew Childs had one too. Parrish and Childs entered the market during business hours. Gaines came in to say they were taking too long. Childs drew the gun and told people this was a robbery. Parrish began to search an employee for weapons. He saw a woman pushing an alarm and said "she is calling the police." Parrish was heading for the exit when he heard a gunshot and saw a muzzle flash. Video showed Childs shooting a customer as Parrish jumped the counter. Parrish drove the robbers away. (*People v. Parrish* (2007) 152 Cal.App.4th 263, 266–268 & fn. 2, 276 (*Parrish*).)

Parrish's defense was duress. He testified he joined the Rolling 30's Harlem Crips gang before age 13. Gaines too was a Rolling 30's member. Parrish testified gang members beat him up for his past police cooperation. Parrish claimed he abandoned the gang but gang members coerced him into this robbery. The prosecution denied it was coercion and said Parrish's robbery motive was to renew and improve his gang position. (*Parrish*, *supra*, 152 Cal.App.4th at pp. 277–279.)

2

The jury rejected the duress defense, convicted Parrish of attempted robbery and felony murder, and found true the allegation the murder was committed during a felony. The trial court sentenced Parrish to life in prison without the possibility of parole. We affirmed. (*Parrish*, *supra*, 152 Cal.App.4th at pp. 268–270, 280.) The Supreme Court denied review.

The decisions in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *Clark* prompted Parrish to petition for habeas corpus, which failed in the trial court and in this court. In 2019, however, the Supreme Court returned the case to us to determine whether *Banks* and *Clark* entitled Parrish to relief. We denied Parrish's petition.

On September 9, 2020 (in S259382), the Supreme Court transferred this case to us with directions to reconsider the cause in light of the new decision *In re Scoggins* (2020) 9 Cal.5th 667 (*Scoggins*). After further briefing, we do reconsider the case and deny Parrish's petition under *Scoggins*, *Banks*, and *Clark*.

We begin by defining the issue, which arises when a murder defendant is not the killer. If this less culpable defendant receives an extremely grave sentence, the mismatch of culpability and consequence can violate the federal Constitution's ban on cruel and unusual punishment. (See *Enmund v. Florida* (1982) 458 U.S. 782; *Tison v. Arizona* (1987) 481 U.S. 137.) Such a mismatched sentence likewise can lack authorization under our state statute incorporating those federal requirements. (See *Scoggins*, *supra*, 9 Cal.5th at pp. 674–676.)

What culpability is required before a state may impose extremely grave sentences on less culpable actors? California Supreme Court decisions prescribe a fact-intensive and individualized inquiry to determine whether the defendant's

3

culpability was major or minor.  (See *Scoggins*, *supra*, 9 Cal.5th at pp. 676–684; *Clark*, *supra*, 63 Cal.4th at pp. 610–623; *Banks*, *supra*, 61 Cal.4th at pp. 794–811.)

*Banks*, for instance, involved only minor culpability.  The defendant was a mere getaway driver who did not know the main actors had formulated an extremely risky robbery plan.  The California Supreme Court granted the defendant's petition and found him statutorily ineligible for life imprisonment without parole.  (See *Banks*, *supra*, 61 Cal.4th at p. 794 & 807.)

The court reached a similar result in *Clark*.  There a robbery mastermind took safety precautions.  He timed the robbery for the close of business and arranged for his robbery team to interact with victims only briefly.  He tried to minimize or eliminate bullets for the one gun at the scene.  One of his team began shooting anyway, but the mastermind did not know this shooter had a propensity for violence.  *Clark* prohibited a death sentence for this safety-conscious planner because the minion's violence was unexpected and contrary to the plan.  (*Clark*, *supra*, 63 Cal.4th at pp. 612–613, 618–623.)

The *Scoggins* decision is a third case of minor murder culpability.  Samuel Wilson had tricked Willie Scoggins out of money.  Scoggins, seeking to get even and to get his money back, got other men to beat and rob Wilson.  Scoggins planned the confrontation for daylight in a public place, when witnesses could help keep the accomplices within the bounds of the plan, which was to rough up Wilson but not use lethal force.  Scoggins's plan involved no weapons.  But the other men were unexpectedly deadly:  they killed Wilson as soon as they found him.  Scoggins did not know they had a gun, and Scoggins was not at the scene to control their violence or to help the victim.  Again, a

mastermind bore only minor culpability because his recruits surprised him by shooting someone to death.  (*Scoggins*, *supra*, 9 Cal.5th at pp. 671–672, 678, 683.)

The sentencing statute has two requirements:  the defendant must have been a "major participant" who acted "with reckless indifference to human life."  (Pen. Code, § 190.2, subd. (d).)  Parrish satisfies both requirements.

The case law interpreting this statute shows Parrish was a major participant in the robbery.  (See *Scoggins*, *supra*, 9 Cal.5th at pp. 675–676; *Clark*, *supra*, 63 Cal.4th at p. 611; *Banks*, *supra*, 61 Cal.4th at p. 794.)  Parrish met this test by actively participating in each stage:  supplying a gun, casing the target, entering the store as part of the robbery team, going to search an employee, announcing a police alert, and driving the robbers to and from the market.

The second requirement concerns the required mental state.  *Clark* followed the lead of the Supreme Court of the United States and relied on the Model Penal Code for this definition.  This second requirement demands proof Parrish acted with reckless disregard for human life.  In particular, the Model Penal Code's formulation asks whether Parrish *consciously disregarded a substantial and unjustifiable risk to human life*. (*Clark*, *supra*, 63 Cal.4th at pp. 616–617 & fn. 73, 622; accord, *Scoggins*, *supra*, 9 Cal.5th at p. 677.)

Parrish had the required mental state.  To make this determination, we apply our Supreme Court's five-step method. (See *Scoggins*, *supra*, 9 Cal.5th at pp. 677–683*; Clark*, *supra*, 63 Cal.4th at pp. 617–623.)

Parrish knew about the guns at the robbery.  (See *Clark*, *supra*, 63 Cal.4th at p. 618; *Scoggins*, *supra*, 9 Cal.5th at pp. 677–678.)  Indeed, Parrish supplied one.

Parrish was at the murder scene, start to finish.  (*Clark*, *supra*, 63 Cal.4th at p. 619; *Scoggins*, *supra*, 9 Cal.5th at pp. 678–679.)  He had the opportunity to try to restrain murderous partners and to help the victim.  Parrish did not take these opportunities.

Parrish knew his cohorts were not peaceable or cautious.  One was a fellow longtime Crips gang member.  The other, according to Parrish, was threatening to kill Parrish himself.  Both wanted to bring guns to the robbery.  This situation differed from cases where defendants had no reason to suspect their fellows were prone to lethal force.  (See *Clark*, *supra*, 63 Cal.4th at p. 621*; Scoggins*, *supra*, 9 Cal.5th at pp. 681–682.)

Parrish emphasizes the robbery attempt ended quickly.  But the brevity of the robbery and the speed of the murder arose because Parrish told the gunmen a witness was calling the police, at which point one gunman shot a witness.  The rapidity of this sequence does not make Parrish less blameworthy.

Parrish took no steps to minimize risk at any point:  before, during, or after the robbery.  (See *Scoggins*, *supra*, 9 Cal.5th at pp. 682–683*; Clark*, *supra*, 63 Cal.4th at pp. 620–622; *Banks*, *supra*, 61 Cal.4th at pp. 807–811.)  Unlike the defendant in *Scoggins*, Parrish knew the robbery plan involved firearms.  (*Scoggins*, *supra*, at p. 683.)  Parrish did not ensure the guns were unloaded.  He did not suggest his colleagues reduce risks.  For instance, the robbery was not planned for after business hours, when fewer people would be present.  (See *Clark*, *supra*, at

p. 620; cf. *Scoggins*, *supra*, at p. 683 [when plan included a beating, public nature of crime helped minimize risk].)

In this analysis, the *Clark* decision again cited the Model Penal Code's definition of recklessness, now to emphasize it contains both a subjective and an objective element.  (*Clark*, *supra*, 63 Cal.4th. at pp. 622–623.)  *Scoggins* reemphasized this point.  (*Scoggins*, *supra*, 9 Cal.5th at p. 677.)  Neither element helps Parrish.  Parrish heightened the risk by telling those with guns the store owner was pushing a police alarm—an act that immediately preceded and apparently prompted the deadly shot.  He took no steps to reduce risks or to alleviate harm.  (See *Clark*, *supra*, at pp. 621–623.)  He did not pause, for instance, to aid or comfort the victim.

## DISPOSITION

The petition is denied.


WILEY, J.


We concur:


BIGELOW, P. J.


GRIMES, J.